E-FILED
Friday, 11 May, 2018  09:18:56 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois



In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

**INFORMATION RELATING TO
TELEPHONE NUMBER (217) 600-1644**

)
)
)
)
)
)

Case No.

18-MJ-7094

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____Central_____ District of _____Illinois_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1591 | Human Trafficking. |

The application is based on these facts:

See attached affidavit of Special Agent Michael Mitchell, incorporated herein by reference.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Michael Mitchell

*Applicant's signature*

SA Michael Mitchell, HSI

*Printed name and title*

Sworn to before me and signed in my presence.

s/Eric I Long

Date: 5/10/2018

*Judge's signature*

City and state:  Urbana, Illinois

Hon. Eric I. Long, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT

I, Michael Mitchell, being duly sworn, state as follows:

### Background of Affiant

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned to call number (217) 600-1644, the "**Subject Phone**," which is described in Attachment A.

2.     I am a Special Agent (SA), with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), assigned to the Resident Agent in Charge in Springfield, Illinois.  I have been employed as a Special Agent for over twenty years. As part of my daily duties as an ICE agent, I investigate criminal violations relating to merchandise or individuals that cross the international border and crimes that affect interstate and foreign commerce such as human trafficking.  I have received training in the area of Customs Law, Immigration Law, and computer forensics.  I have conducted over 300 computer forensics exams since I began conducting computer forensics in 1995.

### Basis and Purpose of Affidavit

3.     The information in this Affidavit is based on interviews of witnesses, my own observations and actions, information received from other law enforcement agents, my experience and training, and the experience of other agents.

1

4.     This Affidavit is submitted for the limited purposes of establishing probable cause to believe that a criminal offense has been committed and that the location information sought in the attached Application (specifically, information relating to the location of the cellular telephone described immediately below) will lead to relevant and material information in the investigation of allegations that a human trafficking network, led by FRANSHON STAPLETON.  As explained below, there is evidence that the phone described below is being used to facilitate human trafficking.

5.     Because of the limited purpose of this Affidavit, I have not included all of the facts known to me or other law enforcement officers about the investigation.

### The Subject Phone

6.     The telephone that is the subject of the attached application is:

- the telephone currently assigned telephone number (217) 600-1644, used by FRANSHON STAPLETON and/or one of his associates to facilitate human trafficking, with service provided by T-Mobile (hereafter, "**Subject Phone**"),

7.     There is evidence that information concerning the use and location of the **Subject Phone** will provide evidence of a criminal offense, namely conspiracy to facilitate human trafficking, in violation of Title 18, United States Code, Section 1591.

### RELEVANT STATUTORY OFFENSES

8.     This investigation concerns alleged violations of:

**Sex Trafficking** in violation of 18 U.S.C. § 1591 prohibits a person who knowingly in or affecting interstate or foreign commerce, or within the

2

special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or who benefits, financially or by receiving anything of value, from participation in a venture, knowing or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.

## INVESTIGATION OF FRANSHON STAPLETON

9.      In early October 2017, Urbana Police Department (UPD) Officer Adam Marcotte observed a black 2004 Ford Expedition bearing Illinois registration number AJ42866 parked near a local motel with an occupant or occupants inside. Officer Marcotte ran said registration number through the Illinois Secretary of State database and learned that this vehicle was registered to Lamar Stapleton of Springfield, Illinois. Shortly thereafter, Officer Marcotte received a Crime Stoppers tip which indicated that a "Franshon Stapleton" was using a black Ford Explorer (which is similar in appearance to a Ford Expedition) to transport prostitutes to and from hotels in the Champaign-Urbana area. The caller detailed STAPLETON's physical description, his date of birth, and the names of five alleged prostitutes-three of which were previously known to Officer Marcotte through his official duties at UPD. Officer Marcotte searched STAPLETON'S name and date of birth in the LEADS law enforcement database and learned that STAPLETON's Illinois driver's license was suspended and he had been arrested numerous times for various offenses. Based on said information, Officer Marcotte determined that he should be on the lookout for said Ford Expedition and Franshon STAPLETON.

3

10.     On November 11, 2017, at about 12:04 AM, Officer Marcotte saw the black 2004 Ford Expedition bearing Illinois registration number AJ42866 parked at the Circle K gas station located at 1809 North Cunningham Road, Urbana. Said gas station is in close proximity to two hotels, known to law enforcement because they are often used for commercial sexual activity. Officer Marcotte saw a black male (later identified as STAPLETON) get into the driver's seat of the vehicle. Officer Marcotte contacted STAPLETON and the vehicle's rear seat passenger, Rebecca MINOR (who was later determined to be one of the commercial sex workers named in the Crime Stoppers tip).

11.     Urbana Police conducted a canine sniff of STAPLETON's vehicle which resulted in a positive alert. A search of the vehicle yielded approximately 4.8 grams of a substance that tested positive for the presence of cocaine, $4,912 in cash, drug paraphernalia, several hundred condoms, and four cellular telephones - one of which was a gray-colored Samsung Galaxy J3 cellular telephone (model SM J327A, IMEI number 3571530866550791). STAPLETON and MINOR were arrested and charged with Unlawful Possession of a Controlled Substance in Champaign County Circuit Court.

12.     After securing this phone and before submitting it as evidence, Officer Marcotte observed a message displayed on said telephone's home screen that read ""wya I need another dub" that indicated it had been sent from the telephone number 217-666-7835, Officer Marcotte and Urbana Detective Michael Cervantes knew from their training and experience that "wya" is an abbreviation for "'where you at" and that "dub" is a slang term commonly used to refer to $20 worth of cocaine. Based on this message, the Samsung

4

Galaxy J3 cellular telephone (model SM J327A, IMEI number 3571530866550791) was likely being used to arrange the delivery of a controlled substance.

13.     Detective Michael Cervantes checked LEADS law enforcement database and found that on August 11, 2016, STAPLETON was convicted of the offense of Manufacture/Delivery of a Controlled Substance in Sangamon County, Illinois, case number 15-CF-959 and sentenced to 36 months of probation.

14.     On November 15, 2017, Sixth Judicial Circuit Judge Thomas J. Difanis authorized the search of the Gray Colored Samsung Galaxy J3 Cellular Telephone (Model SMJ327A IMEI Number 3571530866550791) for evidence relating to the offenses of Unlawful Possession/Possession with Intent to Deliver a Controlled Substance, Prostitution, and/or Promoting Prostitution.

15.     UPD Detectives Michael Cervantes and Elizabeth Alfonso reviewed data that was recovered from the Samsung Galaxy J3 telephone, pursuant to the State of Illinois search warrant.  The cellphone was found to be registered to STAPLETON.  Detectives found several text messages, videos, and photos that were indicative of STAPLETON's involvement in the promotion of prostitution as well as various drug related text messages. Using information from the cellphone, the detectives were able to connect 15 phone numbers involved in text messages to several prostitution ads on Backpage.com.

16.     One of the phone numbers identified on STAPLETON's Samsung J3 cellphone was (217) 600-1644. Detectives located an ad on Backpage.com which had been posted on September 28, 2017, and listed a response phone as (217) 600-1644. The ad was

5

titled "Invite Us Over For Some Fun Babe Wouldn't Want to Miss This" and the text of the ad stated "Grown Man Play Only. Now law welcome. Very Naughty Please NO Be texts! All pics Are US We will COME to YOU ONLY if you can host (217) 600-1644. Text US NOW! I'm RED. Friend is Heather. Double the Fun To your place only. Serious men only Also my other 2 friend buddy's. Only to YOUR place." The ad showed a female with red hair. The detectives believed that female to be MINOR, the same female who was arrested with STAPLETON on November 11, 2017. The ad showed three additional pictures of a female with red hair, also believed to be MINOR. In these pictures the female's face is obscured because she either held a cellphone in front of her face or she is turned around.

## BACKPAGE

17.     Backpage is a classified advertising website launched in 2004. It offers classified listings for a wide variety of products and services including automotive, jobs listings, and real estate. In 2011, Backpage was the second largest classified ad listing service on the Internet in the United States after Craigslist. Backpage became well-known to law enforcement beginning in 2011 for allegations that their adult services subsection was used for prostitution and human trafficking, particularly involving minors. In early 2017, Backpage removed the adult services subsection from their website in the United States, although said adult services simply moved to both the dating and massage sections of the site. On April 6, 2018, the Department of Justice with multiple law enforcement partners seized Backpage, therefore the website is no longer operational. I conducted my initial research prior to April 6, 2018.

6

## ANALYSIS OF THE TEXT MESSAGES ON THE SAMSUNG GALAXY

18.     Your affiant examined data from STAPLETON's Samsung J3 cellphone and found numerous conversations which appear to indicate that STAPLETON was engaged in a venture to promote commercial sex acts. For example, on December 16, 2016, I noted a conversation where it appears that STAPLETON is paying a prostitute in drugs to engage in a commercial sex act with another. On January 27, 2017, I noted a conversation which appears to involve STAPLETON talking to one of the prostitutes and arranging to get her drugs.   On March 7, 2017, I noted a conversation that appears to involve STAPLETON talking to one of his prostitutes to come back to work for him. The discussion includes discussion of his cut (30%). These text messages show that STAPLETON uses electronic communications to recruit and facilitate commercial sex acts.

19.     I also used the facial recognition software through the Illinois Secretary of State to help identify some of the young women depicted in the photographs on STAPLETON's cellphone.  In so doing, I identified a woman known identified herein as Jane Doe[1].

20.     Beginning in February 2018, law enforcement agents located and interviewed Jane Doe regarding her knowledge and experiences with STAPLETON.  Jane Doe stated that she met STAPLETON in the fall of 2017, around September or October, through another woman she met at a party, named Rebecca MINOR.  Jane Doe learned

---

[1] Jane Doe's identity is known to law enforcement, however, based on my concerns for her safety, as a cooperating witness, I have referenced her herein as Jane Doe.

that MINOR was purchasing narcotics from someone at the party and Jane Doe told MINOR that she was struggling to maintain her own drug addiction. Jane Doe also stated that she was homeless and had no resources. MINOR offered to connect Jane Doe with a person who could help her make money, provide her a place to stay, and support her drug habit. Shortly thereafter, Jane Doe and MINOR connected through Facebook and arranged to meet.

21.    When MINOR arrived at the meeting location, she was accompanied by STAPLETON, who provided Jane Doe with a small amount of heroin. STAPLETON took Jane Doe to the Extended Stay America Hotel in Champaign, Illinois, provided her with food, clothing, bath products, and told her she could "just chill." A day or two later, STAPLETON came to Jane Doe's room and demanded that she have sex with him. Jane Doe stated that she felt that she owed him for cost of the room and the drugs, so she complied. After STAPLETON had sexual intercourse with Jane Doe, he told her that other men would be coming to her room to be with her and leaving money. He said he would be back later to collect the money after they left.

22.    Over the next several weeks through about November 2017, STAPLETON arranged for men to use Jane Doe for the purposes of commercial sex acts. If Jane Doe refused to meet with the men, STAPLETON would berate her, hit her, including punching her and strangling her. Jane Doe also observed STAPLETON hit and berate other women who he used to engage in commercial sex acts.

23.     Jane Doe stated that STAPLETON would hold "family meetings" where the women, including MINOR, would be lined up on the bed and STAPLETON pressed his finger to their forehead to show that he was in control.  Once when MINOR tried to swat STAPLETON's hand away, Jane Doe observed STAPLETON punch her in the face and chest.

24.     In addition, STAPLETON would withhold giving Jane Doe money of her own, taking most, if not all of the proceeds of the commercial sex transactions. STAPLETON would also withhold providing Jane Doe with heroin, knowing that her withdrawal symptoms made her severely ill.

25.     On May 8, 2018, two Urbana PD officers took Jane Doe around the Champaign/Urbana area to identify hotels that were used by FRANSHON STAPLETON for the purpose of prostitution at some point between September 2017 when she started working for him and January 2018, when she stopped working for him.  The following hotels were identified:

a.     **Red Roof Inn** - 212 W. Anthony Dr. Champaign – Jane Doe has known STAPLETON and his girlfriend, Kate Curtis, to have their room there for the majority of the time she knew him.

b.     **Days Inn** - 914 W. Bloomington Rd., Champaign – Jane Doe has known Jessica Young and Rebecca Minor, two of STAPLETONS girls, to have engaged in commercial sex acts at this motel, facilitated by STAPLETON.  Jane Doe stated that STAPLETON had rented at least five rooms at his motel at different points.  A photo

recovered from STAPLETON's phone of Young had a geographical tag with longitude and latitude of 40.134167 / -88.260833. Those coordinates return to this Days Inn. This hotel was also the hotel that Jane Doe said she saw STAPLETON attack one woman, who was stealing money and with another drug dealer in a room STAPLETON paid for.

      c.    **America's Best Value Inn** – 1019 W. Bloomington Rd., Champaign.

      d.    **Baymont Inn** - 302 W. Anthony Dr. Champaign.

      e.    **La Quinta** – 1900 Center Dr. Champaign – Jane Doe has worked here.

      f.    **Super 8** – 202 W. Marketview Champaign.

      g.    **Residence Inn** – 502 W. Marketview Champaign. – Jane Doe confirmed this is where she overdosed and ended up in the laundry room before being taken to Presence Hospital sometime around October or November of 2017.

      h.    **Extended Stay of America** – 610 W. Marketview Champaign – Jane Doe started working here with STAPLETON. She said this was where the photos of her were taken that had been I found on STAPLETON's cell phone.

      26.    During the analysis of the phone which was seized from STAPLETON your affiant located text messages from the number 217-600-1644 communicating with STAPLETON and appeared that the person from 217-600-1644 was working with STAPLETON to coordinate the prostitution of the girls. The following text was recovered:

| Party | Time | | Message |
|---|---|---|---|
| **From:** +12176001644 | 11/11/2017 PM(UTC-6) | 8:57:59 | Hyatt hotel. Down town. Room 210 320$ for 2 hours Jessica |

| From: +12176001644 | 11/11/2017 PM(UTC-6) | 9:00:19 | He say how long til there |
|---|---|---|---|
| From: +12176001644 | 11/11/2017 PM(UTC-6) | 9:03:15 | 1301 north walnut. 140$ RED |
| From: +12176001644 | 11/11/2017 PM(UTC-6) | 9:19:09 | Them hits texting asking how long |
| From: +12176001644 | 11/11/2017 PM(UTC-6) | 9:20:24 | Red hit say bring cigs |
| From: +12176001644 | 11/11/2017 PM(UTC-6) | 10:38:12 | Yoooo |
| To: +12176001644 | 11/11/2017 PM(UTC-6) | 10:47:22 | What up |
| To: +12176001644 | 11/11/2017 PM(UTC-6) | 10:47:36 | Jessica working to |
| From: +12176001644 | 11/11/2017 PM(UTC-6) | 10:49:13 | OK I think I got hhr tryna slide |
| From: +12176001644 | 11/11/2017 PM(UTC-6) | 10:49:28 | They n Urbana right |
| To: +12176001644 | 11/11/2017 PM(UTC-6) | 10:56:43 | Yep |
| From: +12176001644 | 11/11/2017 PM(UTC-6) | 11:06:07 | Weirdo texting |
| To: +12176001644 | 11/11/2017 PM(UTC-6) | 11:07:10 | Lol |
| From: +12176001644 | 11/11/2017 PM(UTC-6) | 11:08:06 | She left his ass didn't she? Lol |
| To: +12176001644 | 11/11/2017 PM(UTC-6) | 11:09:29 | Who |
| From: +12176001644 | 11/11/2017 PM(UTC-6) | 11:09:39 | Yooo. Jessica do bare? |
| From: +12176001644 | 11/11/2017 PM(UTC-6) | 11:10:00 | The 140$ hhr. Didn't u take Red to Him? |

27.    On May 8, 2016, your affiant utilized Spotlight (a law enforcement search engine and database designed to search common websites used to advertise sex trafficking) to search the site "skipthegames.com". Your affiant located ten ads posted that were associated with the phone number (217) 600-1644 in the last 30 days and five ads in the last seven days.

11

28.     On May 8, 2016, your affiant setup two undercover lines to text message the phone number 217-600-1644, referred to herein as UC#1 (a number with a 217 area code) and UC#2 (a number with a 309 area code).

a.     Text from UC#1

| | | | | | |
|---|---|---|---|---|---|
| 2018/05/08 | 02:52:51 PM CDT | 217-600-1644 | SMS | Outgoing | hey saw your add, how much |
| 2018/05/08 | 02:53:09 PM CDT | 217-600-1644 | SMS | Incoming | Champaign only |
| 2018/05/08 | 02:53:52 PM CDT | 217-600-1644 | SMS | Outgoing | ok |
| 2018/05/08 | 02:55:32 PM CDT | 217-600-1644 | SMS | Outgoing | I don't mind driving if it's worth the drive |
| 2018/05/08 | 02:55:55 PM CDT | 217-600-1644 | SMS | Incoming | Well worth it |
| 2018/05/08 | 02:56:39 PM CDT | 217-600-1644 | SMS | Outgoing | How much |
| 2018/05/08 | 02:57:07 PM CDT | 217-600-1644 | SMS | Incoming | Qv70hhr120hr170 |
| 2018/05/08 | 02:57:49 PM CDT | 217-600-1644 | SMS | Outgoing | Does anything go |
| 2018/05/08 | 03:04:17 PM CDT | 217-600-1644 | SMS | Outgoing | I guess there are limits since you didn't respond |

b.     Text from UC#2

| | | | | | |
|---|---|---|---|---|---|
| 2018/05/08 | 03:00:26 PM CDT | 217-600-1644 | SMS | Outgoing | where you at |
| 2018/05/08 | 03:01:51 PM CDT | 217-600-1644 | SMS | Incoming | Who's this |
| 2018/05/08 | 03:03:02 PM CDT | 217-600-1644 | SMS | Outgoing | Saw ad on skiptheganes |
| 2018/05/08 | 03:04:17 PM CDT | 217-600-1644 | SMS | Incoming | Urbana il |
| 2018/05/08 | 03:08:46 PM CDT | 217-600-1644 | SMS | Outgoing | how much? do you have room or do i have to get it |
| 2018/05/08 | 03:09:23 PM CDT | 217-600-1644 | SMS | Incoming | Qv90hhr140hr200 motel 6. I have room |

## Planned Investigation

29.     HSI plans to use the information requested in the attached Application to facilitate surveillance of the user of the **Subject Phone**, identify all parties involved in the facilitation of human trafficking, and take enforcement action if appropriate.

30.     HSI further plans to use the information requested in the attached Application to identify and locate individuals who are in contact with the offender or offenders and may be able to provide information relevant to the investigation.

## Relevancy & Materiality of Phone Location Information

31.     Based on my training and experience, I believe that there is probable cause to believe that information regarding the location of the **Subject Phone** namely, from T-Mobile, all information, facilities, and technical assistance needed to ascertain the physical location of the **Subject Phone** will constitute or lead to evidence of the Subject Offenses.  The ability to obtain real-time information about the location of persons involved in criminal activity is valuable to investigators in several ways.  Among other things, it provides evidence regarding the whereabouts of subjects of investigation at times when criminal conduct may be occurring; identifies locations where criminal activity may be occurring, thereby assisting law enforcement agents in establishing surveillance, identifying participants, and identifying locations and vehicles to be searched for physical evidence; and assists in identifying patterns of activity and movement, as well as relationships among individuals involved in the criminal activity.

32.     It is important to the investigation to obtain information from location-based services of the service provider beyond what is commonly known as "cell site information" – that is, records reflecting the cell tower and antenna face used by the **Subject Phone** at the start and end of calls. Cell site information, while useful, typically provides only coarse and non-specific information regarding the location of a telephone based on the coverage area of the cell towers in the vicinity of the phone.

33.     Information obtained from the telecommunications providers using their "Enhanced 911" tools, such as Global Positioning System (GPS) fixes, triangulation, cell-site "pings," received signal strength indicator (RSSI), and timing offset analysis (Doppler-type measurements), precision location information, and mobile locator information, can be much more precise in getting investigators closer to the subject telephone and, thus, to the individual using that telephone. (This process will not intercept the content of any wire communication.) When those location-based services are employed, service providers and law enforcement agents are able to more accurately determine the location of the actual telephone than by using cell site information alone, which typically provides information only about the location of the cell tower and (ordinarily) the direction from which the signal is strongest. In addition, the use of Enhanced 911 and similar technology does not require that law enforcement officers be located in physical proximity to the target telephone. Because of the investigative importance of obtaining information regarding the location of **Subject Phone** at specific times determined by investigators, rather than only at the beginnings and ends of

14

telephone calls, this Application seeks authority for the use of location-based services at times determined by investigators.

## Request for Authorization to Use a Cell-Site Simulator to
## Determine Location of the Subject Phone

34.     The attached application further requests, pursuant to Rule 41 of the Federal Rules of Criminal Procedure and Title 18, United States Code, Section 3127(3), that this Court's order authorize Homeland Security Investigations, and other authorized law enforcement officers to use a pen register, in the form of electronic investigative techniques that capture and analyze signals emitted by the **Subject Phone** for a period of 30 days, including in private places, and that the use of the techniques be without geographic limits.

35.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

36.     To facilitate execution of the requested order, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the **Subject Phone** or receiving signals from nearby cellular devices, including the **Subject Phone**. Such a device may function in some respects like a cellular tower, except

15

that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the **Subject Phone** and thereby prompt it to send signals that include the unique identifier of the device.  Law enforcement may monitor the signals broadcast by the **Subject Phone** and use that information to determine the location of the **Subject Phone**, even if it is located inside a house, apartment, or other building.

37.    The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity.  Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.  In order to connect with the **Subject Phone**, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the **Subject Phone**, and law enforcement will limit collection of information from devices other than the **Subject Phone**.  To the extent that any information from a cellular device other than the **Subject Phone** is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the **Subject Phone** from all other cellular devices.

38.    The attached application requests that this Court's order authorize Homeland Security Investigations, and other authorized law enforcement officers, to

16

employ electronic investigative techniques to determine the location of the **Subject Phone** by capturing and analyzing the signals emitted by the phone to communicate with cellular infrastructure.

39.     As explained in detail above, there is probable cause to believe that information concerning the location of the **Subject Phone** at times determined by investigators will constitute or lead to evidence that is relevant and valuable to the ongoing investigation.

### Delayed Notification and Related Relief

40.     There is good cause to permit the seizure of location information relating to the **Subject Phone**, at any time of the day or night, because of the need to locate the subjects of this investigation at all hours of the day or night.

41.     Providing immediate notification of the execution of any warrant requested in the attached application may have an adverse result as defined at Title 18, United States Code, Section 2705(a)(2), namely flight from prosecution, destruction of or tampering with evidence, and otherwise seriously jeopardizing an investigation, in that STAPLETON is believed to be unaware that their electronic communications are being intercepted, and/or the GPS location of their phones are being monitored. If notified, STAPLETON would likely discontinue use of the **Subject Phone**, and members of the network may destroy evidence or flee. Moreover, the facts of this case justify a period of delay of 30 days, and as set forth above, there is reasonable necessity for the seizure of signal and location information relating to the **Subject Phone**.

17

FURTHER AFFIANT SAYETH NOT.

s/Michael Mitchell

Michael Mitchell
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on this 10th day of May, 2018.
s/Eric I Long

HON. ERIC I. LONG
United States Magistrate Judge

18

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number (217) 600-1644, whose wireless provider is T-Mobile, and is utilized by FRANSHON STAPLETON.

## ATTACHMENT B

Pursuant to an investigation of FRANSHON STAPLETON for a violation of Title 18, United States Code, Section 1591, this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1.  radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2.  radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

1